IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| KENNETH WILLIAM CHANDLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 322-099 |
| | ) | |
| WARDEN CALDWELL; GRIER; and | ) | |
| MS. MCAFEE, | ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, currently incarcerated at Johnson State Prison ("JSP") in Wrightsville, Georgia, commenced the above-captioned civil rights case *pro se* and is proceeding *in forma pauperis* ("IFP"). Defendants filed a pre-answer motion to dismiss, (doc. no. 13). For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendant's motion to dismiss be **GRANTED**, (doc. no. 13), and this case be **DISMISSED** without prejudice, and **CLOSED**.

I.      **BACKGROUND AND PROCEDURAL HISTORY**

On October 3, 2022, the Court screened Plaintiff's complaint and allowed to proceed Plaintiff's conditions of confinement claim against Defendants Caldwell, Grier, and McAfee. (Doc. no. 8.) Defendants move to dismiss, arguing Plaintiff failed to exhaust his administrative remedies prior to filing his complaint. (See doc. no. 13.) Plaintiff did not respond to the motion, and it is therefore unopposed pursuant to Local Rule 7.5.

The Complaint alleges that, on December 14, 2021, at approximately 7 A.M., Plaintiff was stabbed nine times with a sharpened toothbrush by inmate Michael Fletcher while Defendant McAfee, a corrections officer, watched through the window. (Doc. no. 1, p. 5.) Defendant McAfee instructed Fletcher to stop, but he did not stop until he got tired, then Defendant McAfee walked off and never came back. (Id. at 6.) Plaintiff and Fletcher were not taken to medical. (Id. at 5.) Defendant McAfee said she could not get anyone to the dorm to help her because there was no one else there. (Id.) Eight-and-a-half-hours later, at around 3:30 pm, Nurse Barker made rounds to distribute evening medication when Plaintiff told her he had been stabbed nine times. (Id. at 5, 6.) She took him to medical within the next ten minutes. (Id. at 5.)

Plaintiff and Fletcher both told officers they needed to be moved because Fletcher wanted to be alone, and he was violent. (Id.) Fletcher was classified as a level 3 inmate with mental health and delusional issues. (Id.) Plaintiff believes Fletcher should be classified at a higher level because he is irrational, unpredictable, and unstable. (Id. at 6-7.) Plaintiff alleges JSP staff, including Defendant Grier, were aware Fletcher had previously terrorized other older inmates. (Id. at 6.) Defendant Grier placed Fletcher with Plaintiff even though she knew Plaintiff was not violent or a troublemaker. (Id.) Plaintiff told Defendant Grier of Fletcher's prior threats to kill him. (Id.) Fletcher told Defendant McAfee to move one of them or he would kill Plaintiff. (Id.) Defendant McAfee told them both she could not move either of them, and Fletcher then proceeded to stab Plaintiff. (Id.) Plaintiff alleges Defendants Grier and Caldwell violated guidelines for inmate placement when deciding to place Plaintiff in the same cell with Fletcher. (Id.)

In support of their motion to dismiss, Defendants produced the declaration of Chabara Davis-Bragg, the Deputy Warden of Care and Treatment, acting Grievance Coordinator, and Chief Counselor at JSP. (See doc. no. 13-1 (Davis-Bragg Decl.).) As Grievance Coordinator, Ms. Davis-Bragg's responsibilities include ensuring compliance with the Georgia Department of Corrections' ("GDC") Grievance Standard Operating Procedure ("SOP"), coordinating investigations and responses to inmate grievances, and maintaining information and records regarding inmate grievances. (Id. at ¶ 2.) Ms. Davis-Bragg identified five grievances that Plaintiff filed at JSP possibly concerning the events alleged in this lawsuit. (Id. at ¶¶ 16-20 & Attachs. 4-8.)

Grievance no. 339608 concerns the COVID-19 vaccine, incentives for boosters, and Plaintiff being stabbed by another inmate. (Id. at ¶ 16 & Attach. 4.) The grievance and central office appeal were both denied because Plaintiff did not follow proper procedure since they contained more than one issue. (Id.) The appeal was denied on August 22, 2022. (Id.) Grievance no. 339607 was a complaint about officers not checking cells, Plaintiff being stabbed by another inmate, and several other various matters. (Id. at ¶ 17 & Attach. 5.) The grievance and central office appeal were both denied because Plaintiff did not follow proper procedure as they contained more than one issue. (Id.) The appeal was denied on August 22, 2022. (Id.) Grievance no. 341097 concerned Plaintiff being stabbed, McAfee witnessing the stabbing, and Plaintiff's previous tortured by a cellmate. (Id. at ¶ 18 & Attach. 6.) The grievance was denied because Plaintiff did not follow proper procedure since it contained more than one issue, and he did not appeal it. (Id.) Grievance no. 341098 concerned the denial of legal representation, which was denied because it was out of time. (Id. at ¶ 19 & Attach. 7.) Plaintiff did not appeal. (Id.) Lastly, grievance no. 342856 concerned a fellow inmate being

killed and the cause of death being listed as drugs.  (Id. at ¶ 20 & Attach. 8.)  The grievance and appeal were denied because they were not personal or timely.  (Id.)  The appeal was denied on October 27, 2022.  (Id.)

## II.    DISCUSSION

### A.    The Legal Framework

Where, as here, a defendant files a motion to dismiss a claim based on failure to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions.  First, the court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, the defendant's motion will be granted.  Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted)).  If the complaint is not subject to dismissal at the first step, then at step two the court makes specific findings to resolve the disputed factual issues, with the defendant bearing the burden of proving that Plaintiff has failed to exhaust his administrative remedies.  Id.  Based on its findings as to the disputed factual issues, the court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion to dismiss should be granted.  Id.  Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record."  Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any

other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit.  Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).  "The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case."  McKeithen v. Jackson, 606 F. App'x 937, 939-40 (11th Cir. 2015) (*per curiam*) (citing Johnson v. Meadows, 418 F.3d 1152, 1158-59 (11th Cir. 2005)).

The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences."  Porter v. Nussle, 534 U.S. 516, 520 (2002).  Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate.  See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*) (citing Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998)).  Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective."  Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326.  Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'"  Johnson, 418 F.3d at 1155, 1156.

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).  In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way.  Id. at 90 (internal quotations omitted).  If a prisoner

5

fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he does not satisfy the exhaustion requirement. Johnson, 418 F.3d at 1159.

### B.     The Administrative Grievance Procedure

The applicable administrative grievance procedure is GDOC's SOP Policy No. ("PN") 227.02, which became effective on May 10, 2019. (Davis-Bragg Decl. ¶ 3 & Attach. 1.) The grievance procedure has two steps: (1) Original Grievance, and (2) Central Office Appeal. PN 227.02 § IV(C); (Davis-Bragg Decl. ¶ 6.) The administrative remedies procedure commences with filing the original grievance with a counselor or through a kiosk or tablet. PN 227.02 § IV(C)(1)(c-d). The inmate has ten calendar days "from the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance. Id. § IV(C)(1)(b). The timeliness requirements of the administrative process may be waived upon a showing of good cause. Id. The grievance coordinator screens the grievance to determine whether to accept it for processing or recommend the Warden reject it. Id. § IV(C)(1)(e)(i). The grievance may be rejected, *inter alia*, if it raises one of the listed non-grievable issues, includes threats or insults, or raises more than one issue/incident. Id. § IV(C)(1)(e)(ii).

The policy requires the Warden provide a response to the prisoner who filed the grievance within forty calendar days from submission of the original grievance; a onetime ten-calendar-day extension may be granted. Id. § IV(C)(1)(f)(v). If the grievance is rejected, or if the time allowed for a response to the grievance has expired without action, the offender may proceed to step two of the grievance process, a central office appeal. Id. § IV(C)(1)(e)(v) & (c)(1)(f)(viii); § IV(C)(2). The inmate has seven calendar days from the

date he receives the Warden's response to the grievance to file a central office appeal, but this time limit may be waived for good cause. Id. § IV(C)(2)(b). The Commissioner or his designee then has 120 calendar days after receipt of the grievance appeal to deliver a decision to the prisoner who filed the appeal. Id. § IV(C)(2)(e). If the central office appeal results in a determination the original grievance should have been accepted by the facility and processed, the grievance will be returned to the facility for investigation, and the Warden has fifteen calendar days from receipt of the returned grievance to give a decision to the prisoner who filed the grievance. Id. § IV(C)(2)(g). The prisoner has seven calendar days from receipt of the Warden's second response to file a second central office appeal. Id.

### C. Plaintiff's Failure to Exhaust

Plaintiff's complaint was dated for July 8, 2022, and received in the Southern District of Georgia on August 25, 2022. (Doc. no. 1.) Plaintiff's grievance history shows he filed five grievances about various issues in his complaint and appealed three of them to the Central Office. (Davis-Bragg Decl. ¶¶ 16-20 & Attachs. 4-8.) Plaintiff, however, did not attempt to file appeals for grievance nos. 341097 and 341098. (Id.)

Plaintiff acknowledges in his complaint there is a grievance procedure and claims that he filed grievances and appeals, however, he did not provide any information about the grievances or outcome of his appeals. (Doc. no. 1, pp. 3-4.) Plaintiff merely asserts that he "got no response" and "forwarded [the appeals] to the appropriate people." (Id.) There is no dispute Plaintiff filed grievances concerning his claims against Defendants. Thus, under step one of Turner, dismissal is not appropriate because of the uncertainty about the appeal outcome of the remaining three grievances and moves to step two. See Turner, 541 F.3d at 1082.

Under the second Turner step, the Court must make specific findings to resolve the factual disputes regarding exhaustion, and Defendants have the burden to prove Plaintiff did not exhaust administrative remedies. See Maldonado v. Baker Cnty. Sheriff's Office, 23 F.4th 1299, 1307 (11th Cir. 2022). Defendants produced evidence that Plaintiff filed three appeals—in grievance nos. 339608, 339607, and 342856—with the appropriate offices. (Davis-Bragg Decl. ¶¶ 16-20 & Attachs. 4-8.)

Plaintiff filed an appeal in grievance no. 339608 on June 21, 2022, and it was denied on August 22, 2022, for containing more than one issue. (Id. at ¶ 16 & Attach. 4.) Plaintiff filed an appeal in grievance no. 339607 on June 21, 2022, and it was denied on August 22, 2022, for containing more than one issue. (Id. at ¶ 17 & Attach. 5.) Plaintiff filed an appeal in grievance no. 342856 on September 28, 2022, and it was denied on October 27, 2022, because it was not personal or timely. (Id. at ¶ 20 & Attach. 8.) While Plaintiff did appeal these three grievances, Plaintiff did not receive responses to any of the three appeals before the filing of his lawsuit on July 8, 2022. (Id.) Plaintiff does not dispute this evidence. Defendants therefore satisfy their burden under Turner in showing Plaintiff did not properly exhaust the grievance procedure. 541 F.3d at 1082-83.

Because Plaintiff did not exhaust his administrative remedies with respect to his claim against Defendants prior to initiating this lawsuit, the motion to dismiss should be granted. Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (*per curiam*) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted); Higginbottom, 223 F.3d at 1261. Because the motion to dismiss should be granted based on Plaintiff's failure to exhaust, the Court need not address Defendants' other arguments for dismissal. (See doc. no. 13, pp. 13-15.)

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendant's motion to dismiss be **GRANTED**, (doc. no. 13), and this case be **DISMISSED** without prejudice and **CLOSED**.

SO REPORTED and RECOMMENDED this 23rd day of January, 2023, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA